IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VICTORIA ERBE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-20-3266 |
| SETH CAMPBELL, et al., | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Think Big Enterprises of Towson, LLC, Think Big Enterprises Pikesville, LLC, and Think Big Enterprises Carroll County, LLC's (collectively, "Think Big Enterprises" or "Think Big Defendants") Motion to Dismiss and Request for Hearing (ECF No. 13).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

---

[1] Also pending before the Court is a Stipulation and Consent Motion for Extension of Time filed by Defendant Seth Campbell and Think Big Defendants (ECF No. 7). It appears that this filing was submitted to and resolved by the Circuit Court for Baltimore County, Maryland prior to Defendants' removal to this Court. Because the Consent Motion appears to be incorrectly listed as open and pending on this Court's docket, the Court will direct the Clerk to deny the Motion as moot.

## I.   BACKGROUND[2]

### A.   Factual Background

Defendant Seth Campbell is the principal owner of the Think Big Defendants, which collectively do business under the name Keller Williams Legacy. (Compl. ¶ 2, ECF No. 4). Plaintiff Victoria Erbe works in the real estate industry. (Id. ¶ 1). On January 26, 2018, Erbe entered into an employment contract with The DeLorenzo Group. (Id. ¶ 11). Around that time, Erbe also entered into an "independent contractor" agreement with Think Big Enterprises Pikesville, LLC ("Think Big Pikesville"). (Id. ¶¶ 11, 50). Erbe primarily performed her duties at the offices of Think Big Pikesville, but also occasionally worked at the other locations of Think Big Enterprises. (See id. ¶ 11).

In early 2019, Campbell began mentoring Erbe in the course of her work for the Think Big Defendants. (Id. ¶ 13). During a training exercise overseen by Campbell, Erbe shared significant personal information with him, including the fact that she had been sexually assaulted as a teenager. (Id. ¶ 14). After this training session, Campbell used Erbe's disclosures as an excuse to meet with her for personal mentoring. (Id. ¶ 15). Campbell told Erbe that she needed to get over her past sexual assault and that her partner at that time was not giving her what she needed. (Id.). Campbell continued to mix such personal guidance with professional mentoring and indicated to Erbe that he could help her succeed in her career if she took his advice. (Id. ¶ 16). Campbell's personal guidance

---

[2] Unless otherwise noted, the Court takes the following facts from Erbe's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

2

increasingly veered into intimate discussions of Erbe's sex life and his own sex life, and he pressured Erbe to give up her work at The DeLorenzo Group, begin a sexual relationship with him, and to take a job with Think Big Enterprises. (Id. ¶¶ 17–18).

Initially, Erbe tried to brush off Campbell's advances to avoid jeopardizing her position with Think Big Enterprises. (Id. ¶ 18). However, Campbell persisted. (Id.). Erbe finally told him that she was happy in her current relationship and did not want to become romantically involved with him. (Id.). Upon hearing this, Campbell became angry and told Erbe that she would never succeed at Think Big Enterprises. (Id.). He also continued using Erbe's past sexual assault against her, frequently describing it as a "hang up" and saying that he was a "real man" and the only one who could make her successful and get her over her assault. (Id. ¶¶ 19–21). Campbell also said that he could use his "rape room" to get her over her discomfort. (Id. ¶¶ 20–21).

As Campbell continued to regularly mock Erbe's discomfort, his behavior escalated to physical harassment. (Id. ¶ 22). Around June 17, 2019, Campbell called Erbe to his office to listen in on an interview, during which he slid his hand up her thigh to touch her underwear. (Id.). Erbe froze, then began shaking and sweating and immediately left the office. (Id.). She subsequently informed Campbell that his behavior had "crossed the line" and that she would not continue her professional relationship with him unless he respected her boundaries and did not attempt to engage in sexual conduct with her. (Id. ¶ 23).

Campbell claimed that he understood Erbe's concerns and that he would not engage in such behavior again. (Id.). Nevertheless, he continued to imply that Erbe's opportunities for advancement with Think Big Enterprises would soon be unavailable if she did not

accept his advances. (Id. ¶ 24). In addition, Campbell continued to sexually harass Erbe. (Id. ¶¶ 25–27). On one occasion in October 2019, Campbell asked Erbe to look at a picture of "an intimate part of his body." (Id. ¶ 25). On another occasion shortly thereafter, he showed Erbe pictures of him and his wife having sex and moved his hand up Erbe's thigh towards her vaginal area while mocking her trauma. (Id. ¶ 26). On a third occasion, Campbell cornered Erbe in the kitchen at the Think Big Pikesville office and pressured her to touch "an intimate part of his body." (Id. ¶ 27).

Erbe refused these advances and subsequently made an appointment to see the therapist who had helped her through her past sexual assault. (Id. ¶¶ 25–28). As a result of Campbell's actions, Erbe began suffering from night terrors, an eating disorder, body dysmorphia, and alcoholism. (Id. ¶ 29).

**B.     Procedural History**

Erbe filed the present action against Campbell and the Think Big Defendants on November 12, 2020. (ECF No. 4). In her five-count Complaint, Erbe alleges: intentional infliction of emotional distress (Count I); intentional batteries upon the person of plaintiff (Count II); tortious interference with contractual relations (Count III); sexual harassment, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964 (Count IV); and defamation against Defendant Campbell only (Count V). (Id. ¶¶ 30–61). Erbe seeks damages and attorneys' fees. (Id. at 14–15).

Defendant Campbell filed an Answer on November 10, 2020. (ECF No. 6). On November 30, 2020, Think Big Defendants moved to dismiss Counts I through IV against them for failure to state a claim upon which relief may be granted. (ECF No. 13). Erbe filed

4

an Opposition on January 4, 2021. (ECF No. 16). Think Big Defendants filed a Reply on February 1, 2021. (ECF No. 19).

## II.   DISCUSSION

**A.   Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

B.     **Extra-Pleading Materials**

In general, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

Here, Think Big Defendants submit the independent contractor agreement between Erbe and Think Big Pikesville (the "Independent Contractor Agreement" or the "Agreement") as an exhibit to their Motion to Dismiss. (See ECF No. 13-3). Think Big Defendants argue that the Court may consider the Agreement because it is both integral to her Complaint and authentic. In response, Erbe contends that she did not necessarily rely on the Agreement in her Complaint because she refers to it as only a "purported" Agreement and the terms of the Agreement are "contradicted by the control exercised over her by defendants in their day to day operations as a real estate agent." (Pl.'s Response to Entity Defs.' Mot. Dismiss ["Opp'n"] at 4, ECF No. 16).

At bottom, the Court finds that the Independent Contractor Agreement is not integral to Erbe's Complaint. Although Erbe explicitly alleges that she "had a purportedly 'independent contractor' agreement with Defendants, and/or Think Big Enterprises Pikesville, LLC," (Compl. ¶ 11), and the Independent Contractor Agreement might contain evidence that is relevant to Erbe's claims, this limited reference to the Agreement is not enough to incorporate the Agreement wholesale into Erbe's Complaint, see Goines v. Valley Community Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citing Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)). Moreover, to be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" Chesapeake Bay Found., 794 F.Supp.2d at 611 (citation omitted). Here, Erbe alleges that, "[a]lthough [she was] technically an employee of The DeLorenzo Group . . . Defendants were joint employers of [Erbe]" despite the existence of the Independent Contractor Agreement. (Compl. ¶ 11; see also id. ¶¶ 52–53). Thus, although

7

Erbe apparently disputes her employment status under the Independent Contractor Agreement, her claims are not based on the Agreement itself. Accordingly, the Independent Contractor Agreement is not integral to the Complaint, and the Court declines to consider it when ruling on Think Big Defendants' Motion.

**C.     Analysis**

    **1.     Title VII Claim**

Think Big Defendants contend that Erbe's Title VII claim must fail because Erbe does not adequately allege that she is an employee of Think Big Enterprises. The Court agrees.

An entity can be held liable in a Title VII action only if it is an "employer" of the complainant. Butler v. Drive Auto. Indus. of Am., Inc., 793 F.3d 404, 408 (4th Cir. 2015). Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Id. (quoting 42 U.S.C. § 2000e(b)). In turn, an "employee" is "an individual employed by an employer." Id. (quoting 42 U.S.C. § 2000e(f)).

It is well established that independent contractors are not considered employees for the purposes of the statute, and as a result, "Title VII does not apply to independent contractors." Proa v. NRT Mid Atlantic, Inc., 618 F.Supp.2d 447, 458 (D.Md. 2009). Here, Erbe explicitly admits that she entered into the Independent Contractor Agreement with

Think Big Pikesville.[3] (Compl. ¶ 11). Erbe asserts, however, that although she "was 'purportedly' an independent contractor of Think Big Enterprises, Pikesville, LLC, . . . she was an employee for purposes of these claims." (Id. ¶ 52). "Whether a worker is an employee or an independent contractor is determined as a matter of law." Proa, 618 F.Supp.2d at 458 (citing Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 259 (4th Cir. 1997)). To assess whether an individual is an employee or independent contractor, courts look at the following factors, none of which is determinative: (1) "the source of the instrumentalities and tools;" (2) "the location of the work;" (3) "the duration of the relationship between the parties;" (4) "whether the hiring party has the right to assign additional projects to the hired party;" (5) "the extent of the hired party's discretion over when and how long to work;" (6) "the method of payment;" (7) "the hired party's role in hiring and paying assistants;" (8) "whether the work is part of the regular business of the hiring party;" (9) "whether the hiring party is in business;" (10) "the provision of employee benefits;" and (11) "the tax treatment of the hired party." Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 313 (4th Cir. 2001) (citing Cmty. For Creative Non-Violence v. Reid, 490 U.S. 730, 751–52 (1989)). Of these factors, the United States Court of Appeals

---

[3] Although Erbe initially alleges that she "had a purportedly 'independent contractor' agreement directly with Defendants, and/or Think Big Enterprises Pikesville, LLC," (Compl. ¶ 11), she later clarifies that she "had an 'independent contractor' agreement with only Think Big Enterprises, Pikesville, LLC, and not Defendant Seth Campbell individually or the other Think Big Enterprises," (id. ¶ 50). Indeed, of the Think Big Defendants, only Think Big Pikesville is listed as a party to the Independent Contractor Agreement. (Agreement at 1, ECF No. 13-3).

for the Fourth Circuit "has given particular weight to the financial relationship between the hired and hiring parties." Proa, 618 F.Supp.2d at 458 (citing Farlow, 259 F.3d at 314).

Applying these factors here, the Court finds that Erbe has not set forth adequate facts to support an inference that Think Big Pikesville was her employer for the purposes of Title VII. Erbe asserts that two incidents with Defendant Campbell occurred at the offices of Think Big Pikesville, (see Compl. ¶¶ 26–27), and that some of her training was sponsored by Think Big Enterprises generally, (see id. ¶ 14 ("At a Keller Williams Reunion in New Orleans during that year, 'team work" and the importance of 'trust' was emphasized in training supervised by Defendant Campbell on behalf of Think Big Enterprises . . . .")). Aside from these meager assertions, the Complaint is devoid of any facts regarding the nature and extent of Erbe's employment with Think Big Pikesville. In particular, the Complaint says nothing about Erbe's "financial relationship" with Think Big Pikesville. See Proa, 618 F.Supp.2d at 458. Without more, Erbe simply cannot set forth a colorable Title VII claim against Think Big Pikesville.[4]

Separately, even if Erbe had satisfactorily alleged that Think Big Pikesville was her employer, Erbe's Title VII claim against the other Think Big Entities would nonetheless

---

[4] Although the Court declines to rely on the Independent Contractor Agreement for the purposes of its analysis under 12(b)(6), the Court notes that the terms of the Agreement might ultimately weigh against a finding that Erbe was an employee of Think Big Pikesville. For example, in addition to expressly stating that Erbe is to work for Think Big Pikesville as an independent contractor, the Agreement provides that: (1) Think Big Pikesville would not withhold taxes or provide benefits for Erbe; (2) Erbe was expected to set her own schedule and hours; and (3) Erbe was required to supply her own transportation and other items necessary to her duties. (See Agreement ¶¶ 2A, 2B, 2C, ECF No. 13-3). On balance, these terms suggest that Erbe may not be able to establish that Think Big Pikesville was her employer for the purposes of Title VII.

fail because she does not adequately plead that the three Think Big Enterprises were her joint employers. Erbe alleges that although she "purportedly had an 'independent contractor' agreement with only Think Big Enterprises, Pikesville, LLC, and not Defendant Seth Campbell individually or the other Think Big Enterprises," the other Defendants "exercised joint-control over Plaintiff . . . to make them all joint employers for purposes of her [Title VII] claims." (Compl. ¶ 50). The Fourth Circuit has recognized that "multiple entities may simultaneously be considered employers for the purposes of Title VII" under the joint employer doctrine. Butler, 793 F.3d at 410. Under this doctrine, the principal consideration is "the extent to which an employer 'controls' an employee." Id. The Fourth Circuit has articulated the following factors for courts to consider when assessing an entity's control over a purported employee:

> (1) authority to hire and fire the individual;
> 
> (2) day-to-day supervision of the individual, including employee discipline;
> 
> (3) whether the putative employer furnishes the equipment used and the place of work;
> 
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
> 
> (5) the length of time during which the individual has worked for the putative employer;
> 
> (6) whether the putative employer provides the individual with formal or informal training;
> 
> (7) whether the individual's duties are akin to a regular employee's duties;

11

>  (8) whether the individual is assigned solely to the putative employer; and
>
>  (9) whether the individual and putative employer intended to enter into an employment relationship.

Id. at 414.

Here, Erbe alleges that "Defendants exercise[d] . . . significant control over the day to day actions of Plaintiff, and . . . directed, supervised and/or evaluated Plaintiff's work and her professional opportunities." (Compl. ¶ 12). She fails, however, to provide any facts in support of this allegation or explain how Think Big Defendants exercised control over her. As a result, this allegation is precisely the sort of unsupported and conclusory factual assertion that the Court must reject at the motion-to-dismiss stage. See Hirst, 604 F.2d at 847. Because Erbe's Complaint fails to provide any facts that would allow this Court to infer that Think Big Enterprises were Erbe's joint employers, her Title VII claim must fail.

In sum, Erbe has not adequately alleged that she is an employee of Think Big Pikesville or that Think Big Enterprises were her joint employers for the purposes of a Title VII claim. Accordingly, the Court will dismiss Erbe's Title VII claim (Count IV) against Think Big Defendants.

### 2.   Intentional Torts

Think Big Defendants contend that Erbe's intentional tort claims against them should be dismissed because Erbe fails to adequately allege that Defendants are alter egos of one another. In her Opposition, Erbe expressly "concedes these points for purposes of her response" and does not further address the argument. (See Opp'n at 1). As a result, the Court finds that Erbe has abandoned her intentional tort claims against Think Big

Defendants. See Muhammad v. Maryland, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D.Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."). For this reason, the Court will dismiss Erbe's intentional tort claims (Counts I–III) against Think Big Defendants.

### 3. Leave to Amend

Finally, Erbe asserts that, rather than dismiss her claims, the Court should "grant [her] a reasonable time for leave to file an Amended Complaint against [Think Big] Defendants." (Opp'n at 9). Think Big Defendants respond that the Court should deny Erbe's request to amend and instead dismiss her claims with prejudice. For the reasons explained below, the Court finds it appropriate to dismiss Erbe's claims without prejudice but deny her request for leave to amend at this time.

As a general matter, "[d]ismissal because of failure to state a claim is typically without prejudice." United States v. Sum of $70,990,605, 4 F.Supp.3d 189, 195 n.1 (D.D.C. 2014). "[D]ismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Belizan v. Hershon, 434 F.3d 579, 583 (D.C. Cir. 2006) (internal quotation marks, emphasis, and citations omitted). Rather, "a complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to Rule 12(b)(6) but not dismissal with prejudice." Id. (emphasis added).

Here, the Court did not conclude that there is no set of facts that would support Erbe's Title VII claim against Think Big Enterprises; rather, the Court found that Erbe's Complaint did not set forth sufficient facts to give rise to an inference that Think Big

13

Defendants were her employers. Accordingly, the dismissal of Erbe's Title VII claim is without prejudice. As for her intentional tort claims, however, the Court must take a different approach. By conceding Think Big Defendants' arguments for dismissal, Erbe acknowledged the deficiency in her intentional tort claims, thus making it clear that Erbe cannot plausibly state a claim for these causes of action. See McCourry v. Town of Elkton, No. WMN-12-1839, 2014 WL 3534040, at *4 (D.Md. July 14, 2014) (dismissing claims with prejudice where plaintiffs "acknowledged the deficiency of dozens of claims by voluntarily agreeing to dismiss them in response to two motions to dismiss"). As a result, Erbe's intentional tort claims will be dismissed with prejudice.

Although dismissal of Erbe's Title VII claim is without prejudice, the Court cannot properly grant Erbe leave to amend at this time. Under Federal Rule of Civil Procedure 15, Erbe had twenty-one days after the filing of Think Big Defendants' Motion to correct any deficiencies in her Complaint without seeking leave from the Court. See Fed.R.Civ.P. 15(a)(1). Now that such time has passed, Erbe must seek Defendants' consent or leave from the Court in order to amend her Complaint. Fed.R.Civ.P. 15(a)(2). When seeking leave to amend from this Court, a party must submit a copy of the proposed amended complaint as well as a red-lined comparison to the initial complaint. See Local Rule 103.6(a), (c) (D.Md. 2018). Erbe has not done so here. Moreover, Erbe has failed to set forth any reasons why amendment is justified. Without Erbe's justification for her proposed amendments or a copy of the proposed amended complaint, the Court is unable to determine whether

14

amendment is warranted. As such, Erbe's request for leave to amend is denied without prejudice.[5]

### III. CONCLUSION

For the foregoing reasons, the Court will grant Think Big Defendants' Motion to Dismiss (ECF No. 13). A separate Order follows.

Entered this 11th day of May, 2021.

/s/
George L. Russell, III
United States District Judge

---

[5] Of course, Erbe remains free to seek Defendants' written consent to amend her Complaint or formally move the Court for leave to amend in accordance with the Local Rules.